IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GLENDA V. COFFEY,

    Plaintiff,

vs.                      No. CIV. 97-0050 SC/WWD

KENNETH S. APFEL[1], Commissioner
of Social Security,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed September 24, 1997 [9-1].  The Commissioner denied plaintiff's request for supplemental Security Income ("SSI") benefits.  Ms. Coffey, age 27, alleges a disability which commenced March 7, 1983, due to Crohn's Disease and depression.  She has a GED and vocational training as a phlebotomist, and has worked in the past as a secretary's assistant, phlebotomist and distribution clerk.

    2.  The Social Security Administration denied plaintiff's claim both initially and upon reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied plaintiff's application, relying on the grids and concluding that Ms.

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for John J. Callahan, who was Acting Commissioner and the appropriate party at the time of the underlying decision.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Coffey was not disabled. The Appeals Council declined to review plaintiff's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision:  (1) the ALJ erroneously concluded that Ms. Coffey's testimony concerning her impairments was not credible; (2) the ALJ failed to give proper weight to Ms. Coffey's consultative examination; (3) the ALJ erred in concluding that Ms. Coffey could perform her past relevant work; and (4) the ALJ erred when she found Ms. Coffey disabled upon the grids and failed to obtain vocational testimony.

5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 404.1520(a - f).  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6.   At the first four levels of the evaluation, the claimant must show:  (1) that she is not

2

working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

    7.  At this last step, the burden shifts to the Commissioner to show that the claimant has a Residual Functional Capacity ("RFC") to do work in the national economy other than past relevant work.  Thompson at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various Residual Functional Capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

    8.  After several years of complaints of abdominal cramping, frequent diarrhea, some vomiting and knee inflammation, for which she was treated conservatively with pain medication, Ms. Coffey was diagnosed with Crohn's disease in 1992 and underwent surgery for a bowel obstruction.[2]  Dr. John Burden, who did the surgery, felt that although his patient would not need

---

[2] Crohn's disease is defined as a "chronic granulomatous inflammatory disease of unknown etiology, involving any part of the gastrointestinal tract from mouth to anus. . . ; it frequently leads to intestinal obstruction and fistula and abscess formation and has a high rate of recurrence after treatment."  Dorland's Illus. Med'l Dict., 26th Ed.; see Dix v. Sullivan, 900 F.2d 135, 136 (8th Cir. 1990).

postoperative treatment for the disease because the "gross disease" had been resected, nevertheless, she would need to be educated to take care of anticipated future problems. Tr. at 121.

9. In 1993, Ms. Coffey presented with an exacerbation of the usual symptoms, i.e., abdominal cramping, frequent diarrhea and right knee swelling and pain. Drs. Burdon and Benge saw her on follow-up visits, prescribing Prednisone, Vicodin (for pain) and folic acid. Tr. at 129-132; 112, 115. At her June 1993 visit, Dr. Burdon felt that plaintiff's symptoms from Crohn's disease were "now under control," and that his patient reported "total resolution" of her complaints. Tr. at 112. However, one month later, plaintiff presented with a right knee flare-up for which Dr. Benge administered an injection for the pain. Tr. at 128. On another July visit, Ms. Coffey reported that she felt "well" and was told to taper off the Prednisone, which plaintiff states she did over the course of the next several months, until by November she was no longer taking any. Tr. at 177.

10. By August 1993, Dr. Benge considered the disease to be in remission and told plaintiff to return for a follow-up in 6 months. Tr. at 119. Since then, plaintiff has not returned for treatment and has used only over-the-counter medications such as Alleve for her symptoms. Tr. at 181.

**First Alleged Error - Credibility**

11. Plaintiff contends that the ALJ erroneously concluded that Ms. Coffey's testimony concerning her impairments was not credible. The ALJ came to this conclusion because plaintiff had not seen any treating physician since August 1993, used non-prescription medications, had worked in various jobs in 1993, and engaged in daily activities such as household tasks, craft-

4

making and caring for her five-year old. Tr. at 15. The ALJ also found that she was exaggerating in her complaints of knee pain, stomach inflammation, fatigue and constant diarrhea.

12. The ALJ must investigate all avenues presented that relate to subjective complaints, including nature, location, onset, duration, frequency, radiation and intensity of pain; aggravating factors, adverse side effects of medications, treatment, other than medication, for relief of pain, functional restrictions; and claimant's daily activities. SSR-88-13; see Luna v. Bowen, 834 F.2d 161, 166 (10th Cir. 1987).

13. In this case, the ALJ interpreted both plaintiff's testimony and the facts in a way which resulted in her noncredibility determination being unsupported by substantial evidence. For example, plaintiff stated she had stopped seeing her doctors because she was told that there was nothing else they could do for her. In fact, she continues to see a chiropractor in her efforts to get relief. Tr. at 59, 155, 177. Treatment with Prednisone was effective at first in high doses, but plaintiff eventually became refractive to this treatment. Tr. at 129, 155. Thus, Ms. Coffey's failure to follow treatment is insufficient to be considered evidence of her lack of credibility, but rather is justified, when considering the relevant factors.[3]

14. The ALJ considered the fact that Ms. Coffee held several jobs during 1993, such as phlebotomist and home attendant, as other evidence of inconsistency. However, the duration of each of these jobs ranged between two and four months.[4] Plaintiff may have been at these jobs

---

[3] The ALJ should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse. See Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir.1993).

[4] There is a discrepancy concerning the length of employment as homemaker aide, listed in one place in the record as having lasted only one month (3/93 to 4/93), and in another, for seven months (3/93 to 10/93). Tr. at 58, 159.

long enough to learn them,[5] but the pattern of recurring bouts of symptoms interrupting employment is consistent with her disease. Dix, 900 F.2d at 136 (Crohn's disease often accompanied by "periods of inactivity as well as a high rate of recurrence after treatment").

15. Similarly, the picture portrayed by the ALJ in her decision concerning plaintiff's daily activities is somewhat distorted, based on both plaintiff's testimony and other evidence in the record. Tr. at 15. Plaintiff does perform some household tasks, visits friends and enjoys doing jigsaw puzzles and crafts, but not on a basis from which to extrapolate that she can engage in full-time work. Tr. at 57, 173-74; Broadbent v. Harris, 698 F.2d 407 (10th Cir.1983) (holding that sporadic diversions do not establish that a person is capable of engaging in substantial gainful activity). In caring for her five-year old son, she relies on her mother and grandmother, although she does participate in the care. Tr. at 104, 174. Thus, I find that the ALJ's noncredibility determination was in error.

**Second Alleged Error - Dr. Hamilton's report**

16. Plaintiff next contends that the ALJ failed to give proper weight to the consultative examination by Dr. Jan Hamilton, to whom plaintiff was referred by DDS for a medical evaluation for benefits. Dr. Hamilton's report stated that Ms. Coffee's condition had "deteriorated since August 1993," that plaintiff had "constant diarrhea" and joint swelling, and was easily fatigued. Tr. at 103-04. Dr. Hamilton found plaintiff's lifting abilities were limited to less than 5 pounds, her standing and walking limited to 15 minutes without interruption and one hour generally (but "zero" when joint was inflamed), and sitting limited to 30 minutes without interruption and 2

---

[5] Past relevant work must be of sufficient duration to enable the worker to learn to do the job. Jozefowicz v. Heckler, 811 F.2d 1352, 1355 (10th Cir. 1987).

hours generally. Tr. at 107-08.[6]  In the end, she felt that it was "unrealistic" to expect " a patient with [Crohn's disease] to pursue gainful employment." Tr. at 105.

17.     The ALJ discounted this report because it was based on plaintiff's own descriptions and allegations and did not "correlate with her own medical findings." Tr. at 14. It is clearly within the ALJ's authority to reject a physician's opinions which are unsupported by the objective evidence of record. Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994). However, considering that plaintiff's past records with her treating physicians were available for Dr. Hamilton's review, that Dr. Hamilton herself felt that the information obtained in the exam was reliable, that a physical exam "in the standard fashion" was conducted as well as a history eliciting plaintiff's descriptions, Tr. at 103, I find that the ALJ's rejection of this report was in error because it was not supported by the evidence in the record.

**Third & Fourth Allegations of Error**

18.     Plaintiff claims that the ALJ erred in concluding that Ms. Coffey could perform her past relevant work and also when she found Ms. Coffey disabled upon the grids and failed to obtain vocational testimony.

19.     A claimant's residual functional capacity is relevant at both steps four and five. Winfrey v. Chater, 92 F.3d 1017, 1023 n.4 (10th Cir. 1996). At *both* levels of inquiry, the ALJ must evaluate a claimant's physical and mental ability to engage in work on a regular and continuing basis despite any mental and/or physical limitations. Id. at 1023; SSR 82-62. The

---

[6] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b). Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day. SSR 83-10; 20 C.F.R. § 404.1567(a).

difference between the two levels is that at step four, the scope of jobs is limited to those that qualify as the claimant's past relevant work, unlike Step Five, where the scope broadens to encompass any jobs in the national economy. Id.

20.  Plaintiff complains of constant diarrhea, daily stomach pain and inflammation, increased knee swelling and joint pain which requires her to frequently lie down. Tr. at 173-74. On "good days," she is able to go "for a couple hours" before having to lie down to relieve the pain. Tr. at 174. The fact that plaintiff stopped visiting her doctor in August 1993 and is using over-the-counter medications alone *may* be indicative of her disease being in remission prior to the expiration of her insured status.[7] Her condition could in fact be mild enough so that she can be employed despite the nonexertional impairments.  However, given Dr. Hamilton's report, past reports of treating physicians, the recurring nature of the disease and Ms. Coffey's testimony, the ALJ's present findings at both steps four and five are not supported by the evidence, particularly when the issue is to determine whether plaintiff can not only physically perform, but *hold* a job for a significant period of time. See Pettyjohn v. Sullivan, 776 F.Supp. 1482, 1485 (D.Colo. 1991); Washington v. Shalala, 37 F.2d 1437 (10th Cir. 1994).

21.  Here, because the ALJ's determination of noncredibility is not based on substantial evidence, the ALJ used an incorrect legal standard in disregarding plaintiff's nonexertional impairments (joint and stomach pain, colon discomfort & diarrhea), and in the subsequent reliance on the grids. See Ragland v. Shalala, 992 F.2d 1056, 1058 (10th Cir. 1993) (where claimant's exertional capacity is further restricted by nonexertional limitations, reliance on grids is misplaced).  Thus, the analysis into plaintiff's residual functional capacity in light of these

---

[7] In order to obtain benefits, plaintiff must be determined to have been disabled since her filing date of January 11, 1995.

nonexertional limitations was not properly conducted, i.e., consulting a vocational expert if necessary to compare the necessary tasks to be performed with plaintiff's ability to perform them in light of the pain and frequent diarrhea.

22.   It is ironic that Dr. Hamilton's report, which was a consultative report done at government expense, should have been used to resolve conflicts in the medical evidence.  See 41 Soc.Sec.Rep.Ser. 833, 836, Commentary (1993); 20 C.F.R. §§ 404.1517, 416.917.  In this case, when the consultative report could not provide the ALJ with definitive medical evidence (the ALJ's discounting of this report was in error, as discussed above), then another consult to one of plaintiff's treating physicians would have been in order to help determine whether the disease was active.  Such evidence is particularly helpful where the disease is of the kind that never is entirely eliminated, but rather recurs in various stages of severity.  Cmp., e.g., Houston v. Chater, unpubl. op., 56 F.3d 77, 1995 WL 324503 (10th Cir. Okla.) (reliance on grids was in error where record showed evidence of nonexertional impairments such as recurrent episodes of diarrhea during relevant period).

**Mental Impairment**

23.   I do agree with the Commissioner, however, in the legal and factual integrity of  the ALJ's finding that plaintiff's alleged mental impairment of depression does not amount to one which significantly affects her ability to perform basic work-related functions.  Just two months before the administrative hearing, plaintiff started weekly counseling sessions at Rio Rancho Counseling Center where plaintiff was observed to be showing "symptoms of depression," and to have low self-esteem and anger at her life situation.  See Tr. at 161-64.  Ms. Coffee's statement that "they told me that I'm depressed" is consistent with her other statements that her job

9

terminations were due to her physical difficulties and not to depression.[8]

24. Also, I note that the ALJ followed correct legal procedure in filling out a Psychiatric Review Technique Form ("PRT"). Tr. at 19. At the hearing level, ALJ may complete a PRT without the assistance of a medical advisor, which must be attached to the written decision. Andrade v. Sec'y of Health & Hum. Serv., 985 F.2d 1045, 1049 (10th Cir. 1993); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). Therefore, on remand, inquiry need not factor in this impairment.

25. In sum, the ALJ's determination regarding credibility was not based on substantial evidence; the ALJ failed to give proper weight to Dr. Hamilton's report; the ALJ's conclusion that Ms. Coffey could perform past relevant work was not based on substantial evidence; and the ALJ erred in relying on the grids, and should have obtained vocational testimony in her determinations for step three as well as step four.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [9-1] be granted and that this cause be remanded to the Commissioner in order to conduct a proper step three, and if necessary, step four, analysis. A vocational expert should be consulted as part of this inquiry, and a referring consult to plaintiff's treating physician(s) should be considered. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE

---

[8] Memory loss and "shaking" were problems in her job as phlebotomist, but plaintiff attributed these to side effects of Prednisone, not to her mental state. Tr. at 59, 172, 176.